UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRYAN LYLE,

              Plaintiff,

    v.

WAYNE COUNTY SHERIFF DEPUTY SENECAL,
WAYNE COUNTY SHERIFF CORRECTIONAL
OFFICER LEWELLYN, WAYNE COUNTY SHERIFF
CORRECTIONAL OFFICER COREY, WAYNE
COUNTY SHERIFF CORRECTIONAL OFFICER
SGT. VERPLANK, WAYNE COUNTY SHERIFF
CORRECTIONAL OFFICER VERKEY, WAYNE
COUNTY SHERIFF CORRECTIONAL OFFICER
BROWNELL, WAYNE COUNTY SHERIFF CORRECTIONAL
OFFICER SANTELL, WAYNE COUNTY SHERIFF
CORRECTIONAL OFFICER WELCH, WAYNE
COUNTY SHERIFF CORRECTIONAL OFFICER GEER,
WAYNE COUNTY SHERIFF CORRECTIONAL OFFICER
ROSE, and WAYNE COUNTY,

              Defendants.

**DECISION AND ORDER**

6:20-CV-07118 EAW

_____

## INTRODUCTION

Plaintiff Bryan Lyle ("Plaintiff") asserts claims pursuant to 42 U.S.C. § 1983 against Wayne County, Wayne County Sheriff Deputy Senecal, and various Wayne County Correctional Officers (hereinafter collectively "Defendants"). (Dkt. 1). Pending before the Court is Defendants' motion for summary judgment or, in the alternative, for judgment on the pleadings. (Dkt. 52). For the following reasons, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Rule 56(a) Statement of Material Facts (Dkt. 52-9), Plaintiff's Statement of Disputed Facts (Dkt. 55-2), and the exhibits submitted by the parties. Unless otherwise noted, these facts are undisputed.

On December 23, 2017, Wayne County Sheriff Deputy Senecal ("Senecal") responded to a report of criminal mischief at 2160 Church Street, Apartment 4 in Walworth, New York. (Dkt. 52-9 at ¶¶ 3-5; *see* Dkt. 52-5 at 9, 57-59; Dkt. 52-6 at 12-14; Dkt. 55-2). Prior to Senecal's arrival, the owner of the apartment, Joe DiGravio ("DiGravio"), got into an argument and physical altercation with Plaintiff, the tenant of the apartment. (Dkt. 52-9 at ¶¶ 5-7; *see* Dkt. 52-4 at 7; Dkt. 52-5 at 55-58; Dkt. 55-2). DiGravio and Plaintiff were arguing about replacing the apartment's cupboards, and during the altercation, Plaintiff began cutting out the cupboards with a power saw without DiGravio's permission. (Dkt. 52-9 at ¶¶ 7-8; *see* Dkt. 52-4 at 7; Dkt. 52-5 at 55-58; Dkt. 55-2).

When Senecal arrived at the apartment, DiGravio wished to press charges against Plaintiff, and Senecal took Plaintiff into custody. (Dkt 52-9 at ¶¶ 3, 10; *see* Dkt. 52-4 at 7; Dkt. 52-5 at 62; Dkt. 52-6 at 18; Dkt. 55-2). Plaintiff was arraigned at the Walworth Town Court and charged with Criminal Mischief in the Second Degree under New York Penal Law § 145.10. (Dkt. 52-9 at ¶¶ 3, 16; *see* Dkt. 52-4 at 4, 6; Dkt. 52-5 at 60; Dkt. 52-6 at 22-23; Dkt. 55-2). The Walworth Town Court remanded Plaintiff into the custody of the Wayne County Sheriff until his next appearance or bail was posted. (Dkt. 52-9 at ¶ 16; *see* Dkt. 52-4 at 5; Dkt. 52-6 at 24-25; Dkt. 55-2).

Senecal then transported Plaintiff to the Wayne County Jail. (Dkt. 52-9 at ¶ 18; *see* Dkt. 52-5 at 70; Dkt. 52-6 at 25-26; Dkt. 55-2). According to the complaint, when Senecal and Plaintiff arrived at the jail, Senecal "began instigating" Plaintiff and then used "unreasonable and excessive force . . . by striking Plaintiff's head and chest against" a police vehicle. (Dkt. 1 at ¶ 12; *see* Dkt. 52-5 at 75-76; *see also* Dkt. 55-2 at ¶¶ 2-3). In his deposition, Senecal denied using that force against Plaintiff. (*See* Dkt. 52-9 at ¶ 23; Dkt. 52-6 at 33-34, 41). Senecal then, with the assistance of Wayne County Correctional Officers Corey and Lewellyn ("Corey" and "Lewellyn," respectively), escorted Plaintiff to the booking room of the jail. (*See* Dkt. 52-5 at 77-83; Dkt. 52-6 at 55-56).

## DISCUSSION

I. **Legal Standards**

   A. **Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

   B. **Rule 56**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

II. **Plaintiff's Abandoned Claims**

Defendants seek dismissal of, or summary judgment on, all of Plaintiff's claims *except* for the excessive force claim as alleged against Senecal, Corey, and Lewellyn in paragraph 13 of the complaint.[1] (*See* Dkt. 52 at 2; Dkt. 54-1 at 3; Dkt. 60-1 at 3). In his response, Plaintiff contests Defendants' motion only as it relates to his claims against Senecal in paragraph 12 of the complaint.[2] (*See* Dkt. 55-1 at ¶¶ 3-4; Dkt. 55-2 at ¶¶ 2-3; Dkt. 55-3 at 2-3). The Second Circuit has stated:

> [T]here is a relevant distinction to be drawn between fully unopposed and partially opposed motions for summary judgment in counseled cases. . . . [A] partial opposition may imply an abandonment of some claims or defenses. Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. . . . Moreover, preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses. Indeed, Rule 56 is known as a highly useful method of narrowing the issues for trial.

*Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014).

Here, through clear and unambiguous language, Plaintiff intentionally abandons those claims not alleged against Senecal, Corey, and Lewellyn in paragraphs 12 and 13 of the complaint. For instance, Plaintiff asserts in his statement of facts: "I have no opposition

---

[1] Paragraph 13 of the complaint alleges that Senecal, Corey and Lewellyn "used excessive and unreasonable force when thrusting the Plaintiff to the ground when taking the Plaintiff into the jail and forcing Plaintiff's head into the ground." (Dkt. 1 at ¶ 13).

[2] Paragraph 12 of the complaint alleges that "upon arriving at the jail Deputy Senecal began instigating the Plaintiff, and Deputy Senecal used unreasonable and excessive force on the Plaintiff by striking Plaintiff's head and chest against the police car causing the Plaintiff to be even more agitated than Plaintiff had been as a result of the actions of Deputy Senecal."

to the Defendants' Motion except as it relates to paragraph '12' of Plaintiff's Complaint." (Dkt. 55-2 at ¶ 2). And in his memorandum of law:

> [I]t is respectfully submitted that there exists a question of fact as to whether the Plaintiff was slammed against the patrol car by Deputy Senecal. . . . The Court should let that claim go to the trier of fact and deny Defendants' motion on the claim set forth in paragraph "12" of Plaintiff's Complaint.

(Dkt. 55-3 at 2-3).

As such, Plaintiff's claims against Officer Brownell, Officer Geer, Officer Rose, Officer Santell, Officer Verkey, Sgt. Verplank, Officer Welch, and Wayne County are dismissed. Further, all of Plaintiff's claims against Senecal, Corey, and Lewellyn are dismissed, except for the claims alleged in paragraphs 12 and 13 of the complaint.

### III.    Plaintiff's Excessive Force Claims

Plaintiff's remaining claims for excessive force under the Fourth, Fifth, Eighth, and Fourteenth Amendments are brought pursuant to 42 U.S.C. § 1983. (*See* Dkt. 1 at ¶¶ 23-24). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). A plaintiff asserting a cause of action under Section 1983 "must demonstrate that the challenged conduct was 'committed by a person acting under color of state law,' and 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 268-69 (W.D.N.Y. 2016) (alteration in original) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

From the outset, Plaintiff's excessive force claims under the Fourth, Fifth, and Eighth Amendments must be dismissed.  "The Fifth Amendment governs the conduct of the federal government and federal employees, . . . not . . . the activities of state officials or state actors."  *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 435 (S.D.N.Y. 2005) (emphasis, internal quotation marks, and citation omitted); *see Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461-62 (1952).  Because Senecal, Corey, and Lewellyn were state actors, Plaintiff's Fifth Amendment claims cannot survive.  Further, Plaintiff was a pretrial detainee when Senecal, Corey, and Lewellyn allegedly used excessive force against him, and as such, those claims must be construed under the Fourteenth Amendment, rather than the Fourth or the Eighth Amendments.  *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 251-52 (2d Cir. 2020).  For those reasons, Plaintiff's Fourth, Fifth, and Eighth Amendment claims against Senecal, Corey, and Lewellyn are dismissed.

Turning to Plaintiff's excessive force claim against Senecal, as alleged in paragraph 12 of the complaint, "the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Frost*, 980 F.3d at 251 (internal quotation marks and citation omitted).  "An officer's actions can amount to punishment if they are taken with 'an expressed intent to punish.'"  *Id.* at 252 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).  "But even 'in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that

the actions appear excessive in relation to that purpose.'" *Id.* (quoting *Kingsley*, 576 U.S. at 398).

To bring an excessive force claim under the Fourteenth Amendment, then, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. That "objective reasonableness" standard "turns on the facts and circumstances of each particular case . . . [and] should be applied from the perspective and with the knowledge of the defendant officer[.]" *Frost*, 980 F.3d at 252 (internal quotation marks and citation omitted). "Courts consider a number of factors when determining objective reasonableness, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Barnes v. Harling*, 368 F. Supp. 3d 573, 592 (W.D.N.Y. 2019) (quoting *Kingsley*, 576 U.S. at 397).

Here, there is a threshold question of whether Senecal used any force at all on Plaintiff at the Wayne County Jail before Senecal, Corey, and Lewellyn escorted Plaintiff to the booking room. Plaintiff testified at his deposition that he came face-to-face with Senecal when they first arrived at the jail, and Senecal then used his forearms to shove Plaintiff into the side of the vehicle. (*See* Dkt. 52-5 at 132-33). In his own deposition, however, Senecal testified that no such incident took place. (*See* Dkt. 52-6 at 33-34, 41).

In support of their motion, Defendants provide footage from two security cameras at the Wayne County Jail ("intake garage camera" and "pat search room camera," respectively). (*See* Dkt. 52-7). The intake garage camera had a direct view of Plaintiff and Senecal and would have captured the shove if it occurred. But there is a 15 second gap in the footage from the intake garage camera, and according to Plaintiff, Senecal threw Plaintiff into the side of the vehicle during those 15 seconds. (*See* Dkt. 55-3 at 2-3; *see also* Dkt. 52-5 at 131). And while the footage from the pat search room camera is intact, the view of the incident is obstructed.

Based on the Court's review of the footage, there is a genuine issue of material fact as to whether Senecal used excessive force to shove Plaintiff into the police vehicle. *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied . . . ." (internal quotation marks and citation omitted)); *Adamson v. Miller*, 808 F. App'x 14, 16-17 (2d Cir. 2020) ("The central dispute in this claim is a factual one: whether Adamson was placed in a chokehold and punched. A genuine issue as to that material fact would be sufficient to defeat summary judgment . . . ."). To resolve that issue, a jury must assess Plaintiff's and Senecal's credibility at trial. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). For all those reasons, Defendants' motion for summary judgment on Plaintiff's excessive force claim against Senecal, as alleged in paragraph 12 in the complaint, is denied.

## IV. Qualified Immunity

Finally, Defendants argue that qualified immunity applies to Plaintiff's excessive force claim against Senecal as alleged in paragraph 12 of the complaint. (*See* Dkt. 52-10 at 30). "Qualified immunity protects public officials from civil liability only if (a) the defendant's actions did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (internal quotation marks and citation omitted). A right is considered "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). And the "second prong of the qualified analysis permits [the] court to grant summary judgment if a reasonable officer could have believed his or her actions were lawful." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (internal quotation marks and citation omitted).

Although "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed," *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013), here, there are questions of fact surrounding Senecal's alleged use of excessive force that preclude a determination of qualified immunity, *see, e.g.*, *Jie Yin*, 188 F. Supp. 3d at 271-72 (denying summary judgment based on qualified immunity grounds where there were questions of fact as to the circumstances under which the defendant allegedly used excessive force). As such, Defendants' motion for summary judgment on Plaintiff's excessive force claim against Senecal in paragraph 12 of the complaint is denied on qualified immunity grounds as well.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 52) is GRANTED in part and DENIED in part.  Plaintiff's Fourteenth Amendment excessive force claims against Senecal, Corey, and Lewellyn, as alleged in paragraphs 12 and 13 of the complaint, remain.  The Clerk of Court is instructed to terminate Officer Brownell, Officer Geer, Officer Rose, Officer Santell, Officer Verkey, Sgt. Verplank, Officer Welch, and Wayne County as defendants in this matter.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      June 7, 2024
            Rochester, New York